## Derbyshire's Estate.   Lang's Appeal.

1. A ship-builder contracted to build a vessel to be paid for in instalments as the work progressed ; while she was on the stocks unfinished the builder died, payments having been made on her ; she was appraised at the amount which had been paid.   The executors having no funds, the vessel being subject to liens and there being doubt as to the title a purchaser would take, with other circumstances rendering it uncertain whether more than a small amount would be realized from a sale, under the advice of counsel the executor delivered the vessel to the persons for whom it was being built, and took credit for the amount of the appraisement in his account.   An auditor found that under the circumstances the executor had acted wisely and for the best interests of the · estate ; the Orphans' Court approved the finding : the Supreme Court on appeal affirmed the decree.

2. It seems that a vessel on the stocks, before coming under the dominion of the admiralty law, does not differ from any other kind of personal property, and no title papers before completion and delivery are necessary unless under a special contract.

3. Scull *v.* Shakspear, 25 P. F. Smith 297, cited.

January 20th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Delaware county :* Of January Term 1876, No. 75.   In the estate of George Derbyshire, deceased.

George Derbyshire, who was a ship-builder in Chester City, died on the 9th of June 1872, having on the 18th of March 1872, made his will, of which he appointed Amos Gartside his executor.

The will contained the following clause : " I order, direct, authorize and empower my executor to manage, dispose of and control my estate in such manner as in his discretion may seem best, with full power to manage, carry on, adjust, arrange and complete all contracts and work, and business that I now have on hand or in progress, and to use all or any part of my estate in such manner as my executor may deem most expedient to effect the power hereby given him, and further to carry on and conduct in behalf of my estate the business of ship-building and ship-repairing in such manner and for such length of time as my executor may deem advisable, with as full powers in respect to finishing contracts and work now on hand, taking and completing new contracts, and the entire control and continuance of my business, as ·I might exercise and enjoy if living."

The executor filed an inventory of the personal estate of the testator, amounting in the whole to $19,791.58 ; one of the items was, " Schooner, including manufactured iron work for windlass, centre board, rudder and windlass, $12,500."   On the 19th of January 1874, the executor filed his first account ; he charged himself with the amount of the inventory, a large number of items for sums received for the repair of vessels, proceeds of sale of real estate sold for payment of debts and other matters not included in

the inventory; the whole amount of charges being $26,344.12. Amongst the credits was the following item:—

"By amount of appraisement of schooner which had been advanced on to the decedent in his lifetime to her full value $12,500." Another item was for wages, $1856.18; there were other items for payments made in completing and repairing vessels. The account showed in the hands of the executor a balance of $2892.48. On the 24th of August 1874, the executor filed his final account. He charged himself with the balance appearing on his first account, the proceeds of the sale of the ship-yard and some other real estate: the debits amounting to $14,438.98. The credits were for payments of liens against the real estate of decedent, and expenses of administration, &c. The balance in the executor's hands on this account was $2892.48, the same as the balance on the first account.

Harvey Lang and others, creditors of the testator, filed exceptions to the accounts, of which one was to the credit of $12,500 for the value of the schooner; another to several credits amounting to $2528.95, for completing and repairing vessels, and another for $1856.18 for wages.

The account and exceptions were referred to Henry C. Howard, Esq., to report upon them and also to report distribution of the balances.

The auditor reported that at the time of the testator's death, he had under contract and partly finished the schooner for whose appraised value credit was taken in the account: her whole cost was to be $17,000, payable in instalments as the work progressed, and up to that time the parties for whom she was being built had paid to the testator $12,498.82 on account. Ten days after the probate of the testator's will a majority of creditors, not including the exceptors, by writing authorized the executor to exercise the powers given him by the will, and to employ all the assets of the estate so far as to finish the schooner and a sloop in progress at the testator's death, and to do repair work up to the time of finishing the vessels; they also released the executor from all responsibility by the use of the property of the testator for the foregoing purposes. At the meeting at which this agreement was entered into, the exhibit of the condition of the estate showed that it was insolvent. There not being enough due on the schooner to complete her, and the executor having no funds of the estate in his hands, he allowed the persons for whom she was being built to take charge of her; they completed her at their own expense, and the executor allowed them to take her away. The executor expended no money or material of the estate upon her, he received no money from the contract, the persons for whom she was built having expended $1700 in excess of the contract price in her completion; it would have been of no advantage to the estate to complete the vessel. The claim before the auditor of the exceptors was, that by deliver-

[Derbyshire's Estate.]

ing the vessel to those who had advanced money on her, they were preferred to other creditors to the extent of the payment in full of the amount advanced by them ; that the vessel as she stood should have been sold and the proceeds gone into the general fund for a distribution amongst all the creditors.   The auditor found that there had been no fraud, supine negligence, nor wilful default on the part of the executor ; that the executor acted under the advice of counsel, and pursued what he thought to be the best course : the ship-yard was encumbered with liens which were threatened to be sued out, and in the judgment of the auditor, if the vessel had been put up at public sale without a guaranty of the title, freed from liens and with the privilege of finishing her, with the use of the mill, machinery, and tools, she would not have brought anything more than a nominal sum, the title being liable to doubt and the vessel being liable to liens : neither the exceptor nor any other creditor requested the executor to sell the vessel nor was any dissatisfaction at his course expressed by any one.   Some of the exceptors had liens and issued attachments on them, which they released upon receiving bonds from the persons claiming the vessel for whatever amount they should not receive from the estate, not to exceed a certain amount ; the condition of the estate being worse than was anticipated, the claims of the exceptors will not be paid.

The auditor further said : " The purchaser of the vessel would have purchased only the testator's title, which was the right to finish the vessel and receive the contract price."

The auditor, after an elaborate argument and examination of authorities, concludes his report, saying,

" The executor, therefore, could have been called upon to finish this vessel.   How, then, could he have set her up at public sale as the property of Mr. Derbyshire, under any color of title, to say nothing of a guaranty ?   He must either have completed the vessel, or have rescinded the contract, with the permission of the other party to it, and permitted them to take her.   He chose, as he says, to pursue the latter course, and there is no evidence that any loss occurred thereby.   That he had the discretionary power to do this is established by Dougherty v. Stephens, 8 Harris 210.

" The mistake in the first instance would seem to have been in having this piece of property appraised at its general value, as a part of decedent's estate.   If the *value of the contract* had been appraised only, the executor would not have been obliged to crave a credit, which appears primâ facie to be improper.

" If the accountant's testator had lived to fulfil his contract, the only possible advantage he could have derived would have been the excess of the contract price over the cost.   How his estate, insolvent and totally unable to meet its obligations, by reason of his death, is to reap any greater benefit by the application of any rule

[Derbyshire's Estate.]

of justice, it is difficult to see.   And yet such would be the practical effect of sustaining the exception."

Harvey Lang and others, creditors of the decedent, excepted to the report, principally as to the allowance of the credit for the appraised value of the unfinished schooner.

The Orphans' Court, Clayton, P. J., delivered an opinion, holding that the ownership of the vessel was in the parties for whom the testator contracted to build it; he then proceeds:    *    *    *  "This disposes of the whole case, but had the conclusion, as to the property in the ship, been against the owners, I am not prepared to say that the exceptions should be sustained.   Two of the exceptants had liens upon the ship for the full amount of their claims.   According to the case of the Reaney Engineering Works, 29 Legal Intelligencer 157, the liens were good, no matter which party owned the vessel.   The estate was hopelessly insolvent; mortgages were due upon the real estate upon which the vessel was being built; the executor had no means to finish her. To have sold her, without being able to warrant the title, would have realized nothing.   He could neither warrant the title nor give the purchaser the privilege of finishing her where she then stood. Under the circumstances, according to the testimony of the exceptant himself, she would have realized nothing to the estate, and her owners would not only have had their action against the estate for damages, for breach of the contract to build her, but also a personal action of trover against the executor for her value, and in case of recovery he would be liable for the full value of the ship to the owners.   Under these embarrassing circumstances, the executor did what any cautious man would have done—called a meeting of the creditors ; asked their counsel and advice ; consulted his counsel, and took the advice of the creditors and his counsel. If he has made a mistake, having acted in good faith, and with more than ordinary caution, he is not personally responsible.   If he had finished the ship, instead of paying but a dividend on $1702, the amount expended over the contract price, the estate would have expended the whole of that sum, thus materially diminishing the dividends which the exceptants now receive.   Granting, therefore, the title of the ship to be in the executor, I cannot find from the evidence that he has been guilty of such negligence or improper conduct as is sufficient to charge him personally with the appraised value of the ship.

"The exceptions are dismissed, and the report of the auditor is confirmed absolutely."

The exceptors appealed to the Supreme Court, and in a number of specifications assigned the decree of the court for error.

*W. H. Dickinson*, for appellants.—The appellants had a lien on the vessel, because Derbyshire was builder and owner of the vessel : Scull *v.* Shakspear, 25 P. F. Smith 297.   It is negligence for an

executor to prefer one creditor to another; for gross negligence he would be liable to legatees, much more to creditors: Finney's Appeal, 1 Wright 326; Charlton's Appeal, 10 Casey 473. Although the builder may be bound to deliver the particular vessel, it does not necessarily belong to the party for whom it is built, on the first payment: Andrews v. Durant, 1 Kernan 35; Haney v. The Rosabella, 20 Wis. 247; Mucklow v. Mangles, 1 Taunt. 318. Where anything remains to be done to a thing by the vendor before delivery, the title does not pass: Lester v. McDowell, 6 Harris 91; Nicholson v. Taylor, 7 Casey 129; Wanamaker v. Yerkes, 20 P. F. Smith 443; Rochester Oil Co. v. Hughey, 6 Id. 322; Haldeman v. Duncan, 1 Id. 66; Merritt v. Johnson, 7 Johnson 473.

*W. Ward,* for appellee.—A mistake committed in the honest effort to accomplish the best results, and guided by the clearest light to be obtained, will not make a trustee liable for losses: Chew v. Chew, 4 Casey 17; Springer's Estate, 1 P. F. Smith 342; Calhoun's Estate, 6 Watts 185; 2 Williams on Executors 1630 and notes.

Judgment was entered in the Supreme Court, January 31st 1876,

PER CURIAM.—This is by no means a clear case. The inclination of the court is to hold that a ship on the stocks, and while under the law of this state, before reaching her proper element and coming under the dominion of admiralty law, differs not from other kinds of personal property; and therefore no title papers before completion and delivery are necessary, unless otherwise provided for in the contract. This was so held in the case of Scull v. Shakspear, 25 P. F. Smith 297, in relation to the lien of materialmen and mechanics under a law of the state. But the existence of a different view in the English courts made this a question of some doubt, and counsel might well have advised under this adverse view. The insolvency of the builder, the want of funds to complete the large payments made by the parties contracting for the vessel, the necessity of continued control of the ship-yard, the responsibility necessarily incurred by the executor in undertaking to finish the vessel, and the uncertainty of price a public sale would bring, all united to make it a case of great uncertainty and doubt as to what would be the course to be pursued, which would be for the best interests of the estate. In this state of the case, the executor having acted under the advice of counsel, and upon the opinion and advice of a large number of the creditors of the estate (which was insolvent), it would be a harsh judgment to visit the executor with a surcharge, because he had not offered the unfinished hulk at public sale. The finding of the auditor, and the confirmation of the court, that the executor had acted wisely and for the best interests of the estate, ought not to be overturned in a case of so much doubt.

Decree affirmed with costs and appeal dismissed.